**STALWART LAW GROUP**
Dylan Ruga (DR1308)
41 East 11th Street, 11th Fl.
New York, New York 10003
Phone: (212) 651-9070
Email: dylan@stalwartlaw.com

Paul A. Traina (*pro hac vice* application forthcoming)
Ian P. Samson (*pro hac vice* application forthcoming)

1100 Glendon Ave., Ste. 1840
Los Angeles, California 90024
Phone: (310) 954-2000
Email: paul@stalwartlaw.com
Email: ian@stalwartlaw.com

*Attorneys for Plaintiffs and Proposed Class Representatives*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| KEVIN SHULMAN and CARAN ROSS, in their capacities as co-trustees of the FLORENCE SHULMAN POUROVER TRUST; and ESTELLE HARWOOD, individually and in her capacity as trustee of the ESTELLE HARWOOD REVOCABLE TRUST; on behalf of themselves and all others similarly situated, | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Plaintiff, | |
| -against- | |
| HELEN DAVIS CHAITMAN | |
| Defendant. | |

For its claims against Defendant Helen Davis Chaitman ("Ms. Chaitman"), Plaintiffs and Proposed Class Representatives Kevin Shulman and Caran Ross, in their capacities as co-trustees of the Florence Shulman Pourover Trust ("FSPT"), and Estelle Hardwood, individually and in her capacity as trustee of the Estelle Hardwood Revocable Trust ("EHRT") on behalf of themselves and a class of others similarly-situated, through its attorneys Stalwart Law Group, allege as follows:

## INTRODUCTION

1. This action is related to an action pending in this jurisdiction against Becker & Poliakoff, LLP ("B&P") and Chaitman LLP brought by the same plaintiffs and proposed class representatives. Those defendants have moved the Court to dismiss that action on grounds that there is a lack of subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiffs in that action have moved the Court to amend their complaint to add Helen Davis Chaitman as a defendant, which plaintiffs contend will cure any jurisdictional defect (should one exist). The instant complaint filed against Ms. Chaitman is brought to protect any statute of limitations, and will be dismissed if leave to amend is granted in the related action.

2. On or about December 11, 2008, when Bernie Madoff was arrested, thousands of people learned that they had fallen victim to the largest Ponzi scheme in American history. Many had lost their life savings and were desperate to find someone to help them recover.

3. Although many lawyers offered their services, Ms. Chaitman stood apart from the rest because she vowed to stand up to Irving Picard, who was responsible for clawing back funds received by "net winners" and distributing those funds to "net losers."

4. Ms. Chaitman's self-promotion as a savior for other Madoff victims paid off. Within a short amount of time, she had signed up hundreds of clients who agreed to pay her hourly fees to defend them against Mr. Picard's clawback lawsuits.

5. Ms. Chaitman's clients, however, had been swindled twice. First by Madoff, and again by Ms. Chaitman.

6. Ms. Chaitman's greed caused her to violate the first rule of professional ethics: an attorney cannot simultaneously represent clients with directly adverse interests. Ms. Chaitman represented <u>both</u> net winners and net losers in a zero-sum game; the more money collected from some of her clients (the net winners), the more available to be distributed to her other clients (the net losers). Ms. Chaitman's clients, therefore, were in direct conflict with each other.

7. To make matters worse, Ms. Chaitman herself is a net loser, which means she personally stands to receive money taken from her net winner clients. This conflict cannot be waived.

8. At the same time, Ms. Chaitman represented a third group of Madoff investors who sought to keep assets out of Mr. Picard's liquidation proceedings altogether: the so-called "early investors." These clients claim that some of their Madoff profits are not subject to clawbacks because they allegedly were booked before Madoff turned his "legitimate" operation into a fraud. "Early investors" are thus in conflict with <u>both</u> net losers and net winners: Net losers miss out on contribution from early investors to defray their losses, and net winners find themselves responsible for a larger shortfall.

9. Beyond the irreconcilable conflict, Ms. Chaitman bilked hundreds of thousands of dollars (if not more) from each of her net winner clients by actively discouraging them from settling Mr. Picard's clawback actions. When asked, Ms. Chaitman mispresented to her net winner

clients that Mr. Picard never would settle for less than 100% of what he claimed he was owed. In reality, Mr. Picard imposed no such all-or-nothing condition on settlements. This misrepresentation allowed Ms. Chaitman to continue billing these clients hourly for unnecessary—and often unproductive—work.

10. Ms. Chaitman actively concealed basic information from her net winner clients, including her hourly rate (as well as the hourly rates of other, unidentified persons charging time to the file), what specific work she was performing, and how much time she spent on those unknown tasks. Instead, Ms. Chaitman simply forwarded her net winner clients invoices stating the total amount allegedly due, without any backup or description.

11. This lawsuit is brought to vindicate the rights of Ms. Chaitman's clients, who trusted that she would protect their best interests but have now discovered her misconduct.

**PARTIES**

12. Plaintiff and Proposed Class Representative Kevin Shulman, in his capacity as co-trustee of the FSPT, is a resident and citizen of the State of New Jersey.

13. Plaintiff and Proposed Class Representative Caran Ross, in her capacity as co-trustee of the FSPT, is a resident and citizen of the State of California.

14. Plaintiff and Proposed Class Representative Estelle Harwood, individually and in her capacity as trustee of the Estelle Harwood Revocable Trust, is a resident and citizen of the State of Florida.

15. On information and belief, Defendant Ms. Chaitman is an individual residing in the State of New York and within this District. At all times relevant to this complaint, Ms. Chaitman was a partner of the law firms Becker & Poliakoff, LLP or Chaitman LLP.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and at least one member of the proposed class is a citizen of a state different from any defendant. Specifically, Ms. Chaitman represented Plaintiffs and/or proposed class members at two different law firms, and, in the course of that representation, Ms. Chaitman and/or those firms collected in excess of $5,000,000 in attorneys' fees and costs between them.

17. There are more than 100 class members. For instance, Ms. Chaitman currently claims to represent more than 1,600 Madoff victims.

18. This Court has personal jurisdiction over Defendant because Ms. Chaitman resides and conducts business in this State and District.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Ms. Chaitman maintains her principal place of business within this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## NATURE OF THE CASE

20. FSPT and EHRT bring this action against Ms. Chaitman for breach of contract, breach of fiduciary duty, and unjust enrichment arising from Ms. Chaitman's representation of FSPT, EHRT and similarly-situated entities and individuals in litigation stemming from the winding up of Bernard L. Madoff Investment Securities ("BLMIS").

## CLASS ACTION ALLEGATIONS

21. FSPT and EHRT bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons who were represented by Ms. Chaitman and paid legal fees to Ms. Chaitman, B&P and/or Chaitman LLP as a result of that representation

in connection with the BLMIS liquidation litigation. Excluded from the class are Ms. Chaitman, members of Ms. Chaitman's immediate family, any firm, trust, or corporation in which Ms. Chaitman has a controlling interest or which is related or affiliated with Ms. Chaitman, and the legal representatives, assigns, agents, affiliates, and heirs of any such excluded party.

22. The proposed class described in Paragraph 21 is referred to herein as the "Proposed Class."

23. FSPT and EHRT also bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a subclass of all persons who were "net winners" and who were represented by Ms. Chaitman and paid legal fees to Ms. Chaitman, B&P and/or Chaitman LLP as a result of that representation. Excluded from the class are Ms. Chaitman, members of Ms. Chaitman's immediate family, any firm, trust, or corporation in which Ms. Chaitman has a controlling interest or which is related or affiliated with Ms. Chaitman, and the legal representatives, assigns, agents, affiliates, and heirs of any such excluded party.

24. The proposed subclass described in Paragraph 23 is referred to herein as the "Proposed Subclass."

25. Members of the proposed classes are so numerous that joinder of all members is impracticable. Ms. Chaitman represented at least more than 40 individual clients in the BLMIS litigation, and, on information and belief, represented hundreds of such clients. The identities of Ms. Chaitman's clients may be ascertained by records kept by Ms. Chaitman and her law firms, and notice can be provided to such clients via published notice, first-class mail, or via electronic means of communication (*e.g.*, email).

26. FSPT and EHRT will fairly and adequately represent and protect the interests of proposed class members. FSPT and EHRT have retained competent counsel experienced in class

action litigation to further such protection and to prosecute this action in the best interest of the class.

27. Plaintiffs' claims are typical of the claims of those held by other proposed class members because Plaintiffs' and class members' damages and entitlement to equitable relief arise from and were caused by the course of conduct complained of herein. FSPT and EHRT do not have any interests adverse to, or in conflict with, members of the proposed class with respect to the instant action.

28. Common questions of law and fact exist as to all FSPT, EHRT and proposed class members and predominate over any questions affecting solely individual members of the class. Among the questions of law and fact are:

   a. Did Ms. Chaitman represent net winners, net losers, and early investors?

   b. Was Ms. Chaitman's representation of both net winners and net losers a waivable conflict of interest?

   c. Was Ms. Chaitman's representation of both net winners and early investors a waivable conflict?

   d. Was Ms. Chaitman's representation of both net losers and early investors a waiver conflict?

   e. If Ms. Chaitman's conflict of interest could be waived, did FSPT, EHRT and class members waive it?

   f. Did Ms. Chaitman overbill FSPT, EHRT and class members by performing unnecessary work, or work that was not in the best interest of FSPT, EHRT and the class members?

   g. Was Ms. Chaitman unjustly enriched by her misconduct?

      h.  Are FSPT, EHRT and class members entitled to disgorge the fees they paid to Ms. Chaitman, B&P and/or Chaitman LLP?

29.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. FSPT and EHRT know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## GENERAL ALLEGATIONS

### A. Bernard Madoff's Ponzi Scheme and Its Collapse

30.    In late 2008, as the global financial crisis began to shake the foundations of the world economy, a fraud of unfathomable scope was uncovered. Bernard L. Madoff, the principal of BLMIS, revealed that his company's long run of apparent investment success was, in fact, a gargantuan Ponzi scheme. That revelation set off a chain of events leading to the actions described in this complaint.

31.    For several years prior to the discovery of the fraud, BLMIS attracted numerous investors and billions of dollars of assets, primarily due to its apparent success. That success was fictional. Rather than invest customer funds in his purported "split-strike conversion" investment scheme, Madoff simply used funds from new investors to pay off old ones, generating fraudulent account statements and trading documents along the way.

32.    Eventually, as the new money dried up and was insufficient to cover the volume of withdrawals sought by old investors, Madoff's fraud was revealed. Madoff was arrested, pled guilty to several criminal charges, and is currently serving a lengthy prison term.

33.    Meanwhile, BLMIS clients, including Plaintiff and members of the proposed class, suddenly found their life savings embroiled in litigation designed to clean up the mess.

### B. BLMIS Liquidation Proceedings and Litigation

34. Shortly after the revelation of Madoff's fraud, the government stepped in, appointing Irving Picard as the trustee for the liquidation of BLMIS pursuant to the Securities Investor Protection Act ("SIPA"). Among other things, Mr. Picard was charged with determining each customer's "net equity" in BLMIS as required by SIPA—in other words, the amount of the liquidated BLMIS assets to which each customer was entitled.

35. Mr. Picard determined that BLMIS clients' net equity by the "net investment method" by which each customer's deposits were assessed against that customer's withdrawals. That method created two classes of customers. On one hand were "net winners," or those who had received more from BLMIS then they had invested. On the other were "net losers," or those who had invested more than they had received. The Second Circuit approved of the trustee's methodology in 2011. *See In re Bernard L. Madoff Inv. Securities LLC*, 654 F.3d 229 (2d Cir. 2011).

36. On determination of "net equity" vis-à-vis BLMIS set the stage for Mr. Picard's next stage of litigation: attempting to make all BLMIS customers as close to whole as possible. That process necessitated seeking money from "net winners" to provide payments to "net losers" such that the two groups would equalize as close as possible to whole.

37. "Net winners" and "net losers" have divergent interests. Whereas "net winners" would attempt to lower their total liability to the trustee's actions, "net losers" hoped to maximize the recovery from "net winners" to increase their own recovery from the trust assets.

38. In addition, some investors in BLMIS argue that, with respect to at least some of their profits, they are neither "net winners" nor "net losers" because their investments occurred before Madoff converted BLMIS to a Ponzi scheme. These "early investors" claim that Mr.

Madoff's scheme operated as a legitimate trading operation at the time they invested, and only later became a Ponzi scheme. Thus, the "early investors" assert that their pre-Ponzi profits are not part of the BLMIS liquidation proceedings and not subject to clawbacks by the trustee.

### C. Ms. Chaitman's Representation of FSPT, EHRT and Members of the Proposed Class

39. From the time of Madoff's arrest until 2015, Ms. Chaitman agreed to represent, and in fact did represent, both net winners and net losers at B&P. During this time, Ms. Chaitman represented net winners on an hourly-fee basis and she represented net losers on a contingency fee basis.

40. In 2015, Ms. Chaitman formed Chaitman LLP. Since then, she has continued to agree to represent, and in fact has represented, both net winners and net losers. She has continued to represent net winners on an hourly-fee basis and net losers on a contingency fee basis.

41. On information and belief, from the time of Madoff's arrest until 2015, while at B&P, Ms. Chaitman agreed to represent, and in fact did represent, early investors on an hourly basis.

42. On information and belief, since founding Chaitman LLP and leaving B&P, Ms. Chaitman agreed to represent, and in fact did represent, early investors on an hourly basis.

43. EHRT first retained Ms. Chaitman at B&P in or around January 2011. EHRT reaffirmed Ms. Chaitman's representation in 2015 when Ms. Chaitman left B&P and formed Chaitman LLP. At all times, Ms. Chaitman charged EHRT hourly fees for her services.

44. FSPT first retained Ms. Chaitman at B&P in or around February 2011. FSPT reaffirmed Ms. Chaitman's representation in 2015 when Ms. Chaitman left B&P and formed Chaitman LLP. At all times, Ms. Chaitman charged FSPT hourly fees for her services.

45. Ms. Chaitman similarly represented members of the Proposed Class while at B&P from the time of Madoff's arrest until 2015.

46. Ms. Chaitman similarly represented, and continues to represent, members of the Proposed Class while at Chaitman LLP from 2015 to date.

47. During the time that Ms. Chaitman represented net winners like EHRT and FSPT, Ms. Chaitman also represented net losers. For instance:

   a. On January 13, 2014, Ms. Chaitman wrote a letter to Philip von Kahle, conservator of the S&P General Partnership and P&S General Partnership, that read, in part, as follows: "Dear Phil: As you may recall, this firm [B&P] *represents individual investors in S&P and P&S who have 'net loser' claims in the [BLMIS] liquidation*." (Emphasis added.)

   b. On February 6, 2014, Ms. Chaitman wrote the following email to some of her net loser clients that read, in part, as follows: "Dear Friends: As a *net loser*, you may be entitled to receive money from the Madoff Victims Fund. *I will be filing the claim forms for you as part of our retainer agreement*." (Emphasis added.)

   c. On information and belief, Ms. Chaitman's representation of net loser clients continued after she formed Chaitman LLP in 2015. For instance, Chaitman LLP's website boasts that Ms. Chaitman "*represents* approximately 1,600 Madoff customers." (Emphasis added.) In her communications with EHRT and FSPT, however, Ms. Chaitman indicated that she represented fewer than 100 net winner "clawback" clients.

D. **Ms. Chaitman's Misrepresentations to Net Winners**

48.     Throughout the relevant time period, Ms. Chaitman repeatedly represented to net winner clients, including FSPT, EHRT and members of the Proposed Subclass, that continued, full-scale litigation was the only viable option.  Part and parcel of that strategy was to portray Mr. Picard as an avaricious litigant who pursued the clawback claims for his own enrichment and would refuse to settle for anything less than 100 cents on the dollar of any clawback exposure.

49.     These claims were often paired with requests for additional funds for the litigation, such as retainer payments or *pro rata* shares of the purported billings for net winners.

50.     For instance, on July 27, 2016, Ms. Chaitman transmitted an email to her net winner clients that read, in part, as follows:

Dear Friends:

I am writing to request that you pay my firm an annual retainer for 2016 in the amount of $15,000 per case that we are defending, less any retainer balance that we are still holding.  ***True to form, Picard continues to make this litigation as expensive and time-consuming as possible because his only goal is to enrich himself at the expense of innocent customers.***  At this point, we are defending 92 cases.  Some of our clients have settled in the past year with Picard by paying the full two-year exposure.  ***Picard will not settle for less than that*** although, if you prove to him that you do not have the ability to pay the full two-year exposure in full, he will accept a pledge of all your assets to satisfy his claim (after satisfying himself that the customer did not transfer assets to someone in his family).  (Emphasis added).

51. In reality, Mr. Picard did not have an absolute policy of accepting only the full value of the full two-year exposure. For instance, after retaining new counsel, FSPT settled the clawback matter with Mr. Picard for a fraction of its full two-year exposure.

## FIRST CLAIM

### (Breach of Fiduciary Duty)

### Against Defendant HELEN DAVIS CHAITMAN

52. FSPT and EHRT restate and incorporate by reference each of the foregoing paragraphs.

53. This count states a claim for breach of fiduciary duty by FSPT, EHRT and members of the Proposed Class against Ms. Chaitman.

54. As the lawyer for FSPT, EHRT and members of the proposed class, Ms. Chaitman owed them fiduciary duties, including the duty of loyalty.

55. Ms. Chaitman breached her duty of loyalty to FSPT, EHRT and members of the proposed class because Ms. Chaitman simultaneously represented other clients with interests directly adverse to FSPT, EHRT and members of the proposed class.

56. Ms. Chaitman further breached her duty of loyalty to FSPT, EHRT and members of the proposed class because Ms. Chaitman herself was a net loser and therefore stood to benefit in an amount directly correlated to the amount Mr. Picard clawed back from her net winner clients and/or had used her position as a net loser to benefit.

57. FSPT, EHRT and the members of the proposed class therefore are entitled to recover from Ms. Chaitman all compensatory damages caused by Ms. Chaitman's breaches of her fiduciary duty.

58. Ms. Chaitman's conduct amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter Ms. Chaitman from engaging in similar conduct in the future. Accordingly, FSPT, EHRT and the members of the proposed class pray for an award of punitive damages against Ms. Chaitman.

## SECOND CLAIM

### (Breach of Contract)

### Against Defendant HELEN DAVIS CHAITMAN

59. FSPT and EHRT restate and incorporate by reference each of the foregoing paragraphs.

60. This count states a claim for breach of contract by FSPT, EHRT and members of the Proposed Subclass against Ms. Chaitman.

61. As alleged herein, FSPT, EHRT and each of the members of the proposed class engaged Ms. Chaitman pursuant to an agreement whereby FSPT, EHRT and each of the members of the Proposed Subclass promised to pay Ms. Chaitman and/or her law firms an hourly fee in exchange for Ms. Chaitman performing services that were necessary and in the best interests of FSPT, EHRT and members of the Proposed Subclass.

62. Ms. Chaitman breached the contracts with FSPT, EHRT and members of Proposed Subclass by billing them for services that were not necessary or in their best interests.

63. FSPT, EHRT and the members of the proposed class therefore pray that the Court order disgorgement and restitution of any and all attorneys' fees paid to Ms. Chaitman and/or her law firms (*i.e.*, B&P and Chaitman LLP) by FSPT, EHRT or members of the Proposed Subclass.

## THIRD CLAIM

### (Unjust Enrichment)

### Against Defendant HELEN DAVIS CHAITMAN

64. FSPT and EHRT restate and incorporate by reference each of the foregoing paragraphs.

65. This count states a claim for unjust enrichment by FSPT, EHRT and members of the Proposed Class against Ms. Chaitman.

66. As alleged herein, Ms. Chaitman and/or her law firms were enriched by FSPT, EHRT and members of the Proposed Class in the form of fees paid for legal services, including, but not limited to, hourly fees, retainers, and contingency fees.

67. The enrichment of Ms. Chaitman and/or her law firms as alleged was at the expense of FSPT, EHRT and members of the Proposed Class.

68. Equity and good conscience do not permit Ms. Chaitman and/or her law firms to retain the enrichment they received at the expense of FSPT, EHRT and members of the Proposed Class. As alleged herein, the attorney-client relationships formed between FSPT, EHRT and members of the Proposed Class on the one hand and Ms. Chaitman and/or her law firms on the other were improperly and irrevocably tainted by non-waivable conflicts.

69. Ms. Chaitman also, as alleged herein, billed and was paid for needless and quixotic legal work, ostensibly for the benefit of FSPT, EHRT and members of the Proposed Class, but which in reality only benefitted Ms. Chaitman and/or her law firms in the form of increased fees.

70. FSPT, EHRT and the members of the proposed class therefore pray that the Court order disgorgement and restitution of any and all attorneys' fees paid to Ms. Chaitman and/or her law firms (*i.e.*, B&P and Chaitman LLP) by FSPT, EHRT or members of the Proposed Class.

## FOURTH CLAIM

### (Fraud)

### Against Defendant HELEN DAVIS CHAITMAN

71. FSPT and EHRT restate and incorporate by reference each of the foregoing paragraphs.

72. This count states a claim for breach of contract by FSPT, EHRT and members of the Proposed Subclass against Ms. Chaitman.

73. As alleged herein, Ms. Chaitman represented net winners at both B&P and Chaitman LLP and communicated with them as an agent and representative of those firms.

74. As previously alleged in paragraphs 48-51, Ms. Chaitman repeatedly misrepresented the litigation to her net winner clients. Among other things, Ms. Chaitman told FSPT, EHRT and members of the Proposed Subclass that Mr. Picard "will not settle for less" than the "full two-year exposure" to any clawback action.

75. These misrepresentations were material when made because they induced continued full-scale litigation rather than attempts to settle. As a result, Ms. Chaitman continued to bill FSPT, EHRT and members of the Proposed Subclass hourly fees.

76. On information and belief, at the time Ms. Chaitman made the representation, she knew that they were false. Among other things, on information and belief, she was aware that Mr. Picard settled for less than the full two-year exposure.

77. Because Ms. Chaitman represented FSPT, EHRT and members of the Proposed Subclass, she controlled all relevant information concerning communications Mr. Picard and purported comparable settlement results indicating his alleged unwillingness to settle for anything less than 100 cents on the dollar.

78. The misrepresentations were false when made. Indeed, during the relevant time period, the trustee often settled with net winners for less than the full value of their claim. For instance, after retaining other counsel, FSPT was able to settle Mr. Picard's clawback claim for a fraction of the full two-year exposure.

79. On information and belief, Ms. Chaitman made the statements to induce reliance on the part of FSPT, EHRT, and members of the Proposed Subclass. The statements were made in conjunction with Ms. Chaitman's transmission or explanation of bills due from net winner clients.

80. FSPT, EHRT and members of the Proposed Subclass relied on the statements in continuing to pay Ms. Chaitman for full-scale litigation. This reliance was justifiable because Ms. Chaitman's misrepresentations indicated that the only course of action to avoid paying the full exposure was to engage in full-scale litigation against Mr. Picard.

81. The reliance by FSPT, EHRT, and members of the Proposed Subclass resulted in damages to them in the form of continued hourly fees incurred to Ms. Chaitman.

## PRAYER FOR RELIEF

FSPT and EHRT demand trial by jury, and respectfully pray that the Court enter judgment in favor of FSPT, EHRT and members of the Proposed Class and/or Proposed Subclass and against Helen Davis Chaitman on all claims for relief, and grant FSPT, EHRT and members of the Proposed Class and/or Proposed Subclass the following relief:

A. An award of general or specific damages according to proof;

B. An order of restitution to FSPT, EHRT and members of the Proposed Class and/or Proposed Subclass of all amounts obtained by Helen Davis Chaitman and/or her law firms by means of their wrongful acts described above;

C. An order awarding FSPT and EHRT their costs and attorneys' fees incurred in prosecuting this action;

D. An award of pre-judgment interest, as appropriate; and

E. An award of such other relief as the Court may determine just and proper.

Dated: September 6, 2018

*Respectfully submitted,*
**STALWART LAW GROUP**

_____
Dylan Ruga (DR1308)
41 East 11th Street, 11th Fl.
New York, New York 10003
Phone: (212) 651-9070
Email: dylan@stalwartlaw.com

*Attorneys for Plaintiffs and Proposed Class Representative*

**JURY DEMAND**

FSPT and EHRT hereby demand a jury trial as to all issues so triable.

Dated: September 6, 2018

*Respectfully submitted,*
**STALWART LAW GROUP**

_____
Dylan Ruga (DR1308)
41 East 11th Street, 11th Fl.
New York, New York 10003
Phone: (212) 651-9070
Email: dylan@stalwartlaw.com

*Attorneys for Plaintiffs and Proposed Class Representative*